IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES OYLER                                                                                            PLAINTIFF

V.                        CASE NO. 3:20-CV-00371 JM-JTK

SOCIAL SECURITY ADMINISTRATION                                        DEFENDANT

RECOMMENDED DISPOSITION

I. **Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

II. **Introduction:**

Plaintiff, James Oyler ("Oyler"), filed applications for disability benefits and supplemental security income on July 24, 2017. (Tr. at 10). In the applications, he alleged that his disability began on September 24, 2014.[1] *Id*. The applications were

---

[1] At the hearing, Oyler amended his alleged onset date to September 1, 2016. (Tr. at 10).

denied initially and upon reconsideration. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Oyler's claim on December 26, 2019. (Tr. at 10-23). The Appeals Council denied Oyler's request for review of the hearing decision. (Tr. at 1-7). The ALJ's decision now stands as the final decision of the Commissioner, and Oyler has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   The Commissioner's Decision:

The ALJ found that Oyler had not engaged in substantial gainful activity since the alleged onset date of September 1, 2016.[2] (Tr. at 21). The ALJ found, at Step Two, that Oyler has the following severe impairments: diabetes mellitus with diabetic neuropathy, osteoarthritis of the bilateral knees, the residual effects of a fusion of the cervical spine, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and loss of hearing in the left ear. (Tr. at 13).

At Step Three, the ALJ determined that Oyler's impairments did not meet or equal a listed impairment. (Tr. at 15). Before proceeding to Step Four, the ALJ determined that Oyler had the residual functional capacity ("RFC") to perform work

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

at the light exertional level, with additional limitations: (1) he could no more than occasionally climb ramps and stairs; (2) he could no more than occasionally balance, stoop, kneel, crouch, or crawl; (3) he could no more than occasionally reach overhead and could no more than frequently handle and finger; (4) he should avoid temperature extremes; (5) he can tolerate noise levels of 3 or below; and (6) he needs the option to alternate between sitting and standing hourly for position change. (Tr. at 15-16).

At Step Four, the ALJ found that Oyler was able to perform past relevant work as a companion. (Tr. at 20). Additionally, relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that that, based on Oyler's age, education, work experience, and RFC, there were jobs in the national economy that he could perform. (Tr. at 21-22). Therefore, the ALJ found that Oyler was not disabled. *Id*.

## IV. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Oyler's Arguments on Appeal

Oyler contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) ALJ did not properly evaluate Oyler's subjective complaints; (2) the ALJ did not sufficiently evaluate the opinion of Oyler's treating nurse; (3) Oyler could not perform his past relevant work; (4) the ALJ did not resolve an alleged conflict between the *Dictionary of Occupational Titles* ("DOT") and the testimony of the VE; and (5) the Commissioner exceeded her authority in promulgating new regulations about how ALJs should treat medical opinions.

Oyler suffered left ear hearing loss, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, and diabetes with neuropathy. (Tr. at 15-20). In general, treatment during the relevant time-period was conservative (prior to the relevant time-period, Oyler underwent fusion surgery in his cervical spine). (Tr. at 88). Medication and steroid injections helped to manage Oyler's symptoms of pain.[3] (Tr. at 18-19, 2010-2043). Objective imaging did not show severe conditions. (Tr. at 17-20, 1369). While Oyler had reduced range of motion in his lumbar and cervical spine, on August 22, 2017, muscle strength and tone in extremities were

---

[3] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

normal and Oyler denied joint stiffness or limitations on joint movement. (Tr. at 2030-2043). Although Oyler said he used a cane to get around, there is no evidence that any doctor prescribed that. (Tr. at 17). And in November 2018, Oyler denied any gait unsteadiness. *Id*.

Oyler alleges that the ALJ did not fully evaluate or discuss his subjective complaints.[4] In fact, the ALJ discussed in depth the nature and extent of Oyler's pain, his treatment modalities, and his positive response to treatment. (Tr. at 16-19). She discussed precipitating and aggravating factors. She discussed Oyler's tendency toward noncompliance with treatment. (Tr. at 18). She noted that Oyler told his doctors that he could perform activities of daily living. (Tr. at 16-18). The ALJ fulfilled her duty with respect to Oyler's subjective complaints.

Oyler's treating nurse, APRN Katie Stucker, offered a medical source opinion on April 29, 2019 (Tr. at 1210-1213), in which she stated that Oyler would be limited to sedentary work. However, treatment notes stated that Oyler could heel-toe walk, had nearly full muscle strength, and had good range of motion in all extremities. (Tr.

---

[4] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

at 2008-2063). Nurse Stucker herself said that Oyler could drive 3-4 hours at a time. (Tr. at 1212). Oyler's doctors wrote that pain medications improved function and quality of life. (Tr. at 1106). His doctors observed that he could perform daily activities. (Tr. at 2010-2043). Treatment during the relevant time-period consisted largely of pain medication, rather than something aggressive like nerve stimulation or surgery.[5] *Id*.

The ALJ concluded that Nurse Stucker's opinion was not persuasive (Tr. at 19-20), given the balance of the medical record cited to in the preceding paragraph.[6] The ALJ also cited to the opinions of the state agency medical experts, which opinions stated that Oyler could perform light work.[7] Nurse Stucker's imposed

---

[5] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[6] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

[7] Both state agency medical experts reviewed the evidence and concluded that Oyler could perform work at the light exertional level. (Tr. at 20, 154-183). This was supported by the record, and thus, the ALJ's RFC for light work with postural limitations was appropriate.

restrictions were simply overstated, according to the ALJ. This conclusion was supported by the record.

Next, Oyler argues that he could not perform his past relevant work. The ALJ carefully questioned Oyler about his past work as a companion, and the functional requirements of the job. (Tr. at 84-88). She then proposed a hypothetical to the VE incorporating Oyler's credible physical limitations. (Tr. at 21, 86, 105-107, 331). The Court finds that the hypothetical was aligned with the evidence in the record about Oyler's limitations, and that the VE supported her conclusion that Oyler could perform the work of companion.

Oyler's argument that the ALJ failed to resolve a potential conflict at Step Five fails.[8] The ALJ asked the VE if her testimony was consistent with the DOT, and she responded that while the DOT was silent on overhead reaching, Oyler would be able to perform the jobs identified at Step Five.[9] (Tr. at 107-108). She said she based that opinion on her experience in the field as a rehabilitation counselor and familiarity with the particular jobs identified. *Id*. This sufficiently resolved any

---

[8] Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

[9] Because Oyler could perform past work, the ALJ did not have to proceed to Step Five, so Oyler's argument here is superfluous.

8

potential conflict, and the ALJ was permitted to rely on the VE's testimony.

Finally, Oyler makes a wide-ranging argument that the Commissioner exceeded her powers by promulgating new regulations in 2017 concerning evaluation of medical opinions. Oyler argues that because the new regulations deviate from precedent regarding treating physicians' opinions, that promulgation was impermissible.

Actually, the Commissioner has broad rulemaking authority under the Social Security Act ("Act") to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits. 42 U.S. C. §§ 405(a) 902(a)(5); *Barnhart v. Walton*, 535 U.S. 212, 217-225 (2002) (Commissioner has "considerable authority" to interpret the Act). The 2017 regulations inform the Commissioner about how to evaluate medical opinions for adjudication of claims, and the Eighth Circuit has accepted this policy. See *Austin v. Kijakazi*, 52 F.4th 723, 728-30 (8th Cir. 2022) (under revised regulations, treating physicians' opinions are no longer entitled to special deference; finding that prior precedent applying treating-source rule was inapposite); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *Jarmon v. Kijakazi*, 2023 U.S. App. LEXIS 5368 (8th Cir. March 7, 2023) (affirmed ALJ's decision to deny benefits, dispatching with the same

argument that Oyler makes in the instant case).

Courts should defer to an agency's regulatory construction unless it is "arbitrary, capricious, or manifestly contrary to statutes." See *Chevron, U.S. A. Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-844 (1984). Oyler has shown no manifest error here.

## V. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated Oyler's subjective complaints and the medical opinions. Oyler failed to show that he could not perform his past relevant work. The ALJ properly resolved any apparent conflict at Step Five, and Oyler's final argument fails. The finding that Oyler was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 23rd day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE